# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 20-82192-CIV-ALTONAGA

**FERNANDO IVAN HINESTROZA**,

      Petitioner,

v.

**FLORIDA DEPARTMENT OF
CORRECTIONS**,

      Respondent.

_____/

## <u>ORDER</u>

**THIS CAUSE** comes before the Court on Petitioner, Fernando Ivan Hinestroza's *pro se*
Petition Under 28 U.S.C. [Section] 2254 for Writ of Habeas Corpus by a Person in State Custody
[ECF No. 1], filed on November 23, 2020.[1]  Petitioner challenges the constitutionality of his
convictions and sentences for robbery and false imprisonment entered following a jury trial.  (*See
generally* Pet.).

Respondent filed a Response to Order to Show Cause [ECF No. 8]; Appendix to the
Response [ECF No. 10] with attached exhibits (*see* App. Exs. 1–27 [ECF Nos. 10-1, 10-2, 10-3]);
and a Notice of Filing Transcripts [ECF No. 9] with attached transcripts (*see* Rule 3.850
Evidentiary Hr'g Tr. [ECF No. 9-1]; Mot. to Suppress Hr'g Tr. [ECF No. 9-2]; Trial Tr. [ECF No.
9-3]; Sentencing Hr'g Tr. [ECF No. 9-4]).  Petitioner filed a Reply [ECF No. 14] and several
Notices of Supplemental Authority [ECF Nos. 15, 16, 17].  The Court has carefully considered the
parties' written submissions, the record, and applicable law.  For the following reasons, the Petition

---

[1] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered
to prison authorities for mailing."  *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations
and quotation marks omitted).

is denied.

## I.   BACKGROUND

### A.   The Information and Pre-trial Period

An Information filed in case number 15-CF-006523-AMB in the Fifteenth Judicial Circuit Court in Palm Beach County charged Petitioner with two counts: robbery in violation of Florida Statutes sections 812.13(1) and (2)(c), a second-degree felony (Count 1); and false imprisonment in violation of Florida Statutes section 787.02(2), a third-degree felony (Count 2).  (*See* App. Ex. 2 Indictment 14–15).[2]  The charges pertained to an incident that occurred on June 28, 2015 at Gold Reef Gold Buyers, a jewelry store in Palm Beach County.  (*See id.*; *see also* Trial Tr. 117, 130). Petitioner had frequented the jewelry store on several previous occasions including the day before the crime when Petitioner spoke to Rosie Ciotto, an employee of the jewelry store, about purchasing a tennis bracelet and engagement ring for his girlfriend.  (*See* Trial Tr. 136, 141).

The State extended a plea offer to Petitioner for a 15-year sentence as a Prison Releasee Reoffender ("PRR").[3]  (*See* Rule 3.850 Evidentiary Hr'g Tr. 9, 24; Trial Tr. 5).  Counsel attempted to negotiate with the State for an offer without the PRR designation, but the State declined the proposal.  (*See id.* 24).  Counsel and Petitioner met frequently and discussed the plea offer on several occasions.  (*See id.* 8–14, 24–25).  At first, Petitioner was not interested in the offer due to the PRR designation, but Petitioner changed his mind and told counsel he wanted to accept the offer.  (*See id.* 8, 24).  Counsel, however, advised Petitioner that she had filed a motion to suppress his statements and the State represented that it would not withdraw the offer until after the hearing on the motion to suppress.  (*See id.* 10, 24).  Following the denial of the motion to suppress, the

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[3] Fla. Stat. § 775.082(9)(a).

State's offer remained open as promised, but Petitioner proceeded to trial.  (*See id.* 10–11, 24–25).

**B.      Jury Trial and Sentencing**

At trial, the jury heard testimony from Ms. Ciotto and the detective who interrogated Petitioner after he was taken into custody.  (*See* Trial Tr. 129–98, 204–33).  The jury also watched surveillance footage from the jewelry store that captured the entire encounter (without audio) between Petitioner and Ms. Ciotto.  (*See id.* 169–81).  Additionally, the jury heard a recording of Petitioner's confession where he admitted to committing the robbery and telling Ms. Ciotto, "I have a gun.  Get in there."  (*Id.* 217; *see id.* 213–28).

Counsel presented an "afterthought" defense.  (*Id.* 318–28; *see id.* 305 ("If the evidence shows that the taking of the property occurred as an afterthought to the use of force or violence, the taking does not constitute robbery but may still constitute a theft.")).  Counsel argued that contrary to the State's theory that Petitioner planned the robbery and falsely imprisoned Ms. Ciotto, Petitioner never intended to rob the jewelry store.  (*See id.* 318–28).  Instead, Petitioner grew frustrated with Ms. Ciotto over the price of a tennis bracelet and a ring.  (*See id.* 319).  Counsel argued that Petitioner committed a battery upon Ms. Ciotto when he forced her into a backroom, and then, as an afterthought, he committed theft when he took some jewelry with him on his way out of the store.  (*See id.* 319–21, 324, 326–28).  The jury was instructed on the afterthought defense, the lesser included crimes of robbery and false imprisonment — theft and battery, respectively — and returned a verdict of guilty as charged on both counts.  (*See id.* 272–73, 305, 344).

At sentencing, the trial court determined Petitioner met the criteria to be sentenced as a PRR and therefore was not eligible for sentencing under the guidelines.  (*See* Sentencing Hr'g Tr. 19–20).  On Count 1, Petitioner was sentenced to 15 years in state prison of which he "must serve

100% of that Court-imposed sentence." (*Id.* 21). On Count 2, Petitioner was sentenced to five years in state prison to run consecutive to the sentence on Count 1, for a total of 20 years in state prison. (*See id.*).

### C.   Direct Appeal and Collateral Proceedings

*Direct Appeal*. Petitioner timely filed an appeal with the Fourth District Court of Appeal ("Fourth DCA"). (*See* App. Ex. 8, Initial Br. of Appellant 33–88). The Fourth DCA per curiam affirmed the trial court's conviction and sentence. *See Hinestroza v. State*, 236 So. 3d 427 (Fla. 4th DCA 2017) (table).

*Writ of Habeas Corpus for Ineffective Assistance of Appellate Counsel*. Before the period for seeking discretionary review in the Supreme Court of the United States expired, Petitioner filed a Petition for Writ of Habeas Corpus Alleging Ineffective Assistance of Appellate Counsel under Florida Rule of Appellate Procedure 9.141(d)(1) with the Fourth DCA. (*See* App. Ex. 15, Pet. for Writ of Habeas Corpus 200–17); *see* Sup. Ct. R. 13.1 ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."). The Fourth DCA denied the petition without a written opinion. *See Hinestroza v. State*, No. 4D19-0182 (Fla. 4th DCA Apr. 3, 2019).

*Rule 3.850 Motion*. While Petitioner filed his Petition for Writ of Habeas Corpus, he also filed a Motion for Postconviction Relief and Memorandum of Law in Support of Motion for Postconviction Relief under Florida Rule of Criminal Procedure 3.850. (*See* App. Exs. 13–14, Mot. for Postconviction Relief ("Rule 3.850 Mot.") and Mem. of Law in Support of Mot. for Postconviction Relief ("Mem.") 170–98). Petitioner raised two claims of ineffective assistance: (1) trial counsel was ineffective for misadvising Petitioner regarding the State's 15-year plea offer;

and (2) trial counsel was ineffective for failing to call Petitioner to testify.[4]  (*See* Rule 3.850 Mot. 170–77; Mem. 179–98).  The trial court granted Petitioner an evidentiary hearing.  (*See* App. Ex. 20, Order Granting Evidentiary Hr'g on Def.'s *Pro Se* Mot. for Postconviction Relief 103–04; Rule 3.850 Evidentiary Hr'g Tr.). Following the hearing, the trial court entered a written order denying the Rule 3.850 Motion.  (*See* App. Ex. 21, Order Denying Def.'s Mot. for Postconviction Relief ("Order Denying Rule 3.850 Mot.") 106–23).

Petitioner timely appealed the trial court's denial of his Rule 3.850 Motion to the Fourth DCA.  (*See* App. Ex. 23, Initial Br. 229–60).  The Fourth DCA per curiam affirmed the trial court's denial.  *See Hinestroza v. State*, 303 So. 3d 942 (Fla. 4th DCA 2020) (table).

***This Petition***.  In his present Petition, Petitioner challenges his conviction and sentence under 28 U.S.C. section 2254.  (*See generally* Pet.).  Construing Petitioner's arguments liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), the Petition raises the following three grounds for relief:

   (1)   Appellate counsel was ineffective for failing to raise on direct appeal the trial court's rejection of Petitioner's *Batson*[5] claim during jury selection. (*See* Pet. 5–9).

   (2)   Trial counsel was ineffective in misadvising Petitioner to reject the State's plea offer.  (*See id.* 10–14).

   (3)   Trial counsel was ineffective for interfering with Petitioner's constitutional right to testify.  (*See id.* 14–20).

---

[4] Petitioner's second claim appeared only in the Memorandum of Law, but the trial court addressed both claims.

[5] *Batson v. Kentucky*, 476 U.S. 79 (1986).

## II.     STANDARDS

### A.     Deference under Section 2254

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007).  "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction."  *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (alteration added; quotation marks omitted; quoting *Greene v. Fisher*, 565 U.S. 34, 43 (2011)).  This standard is "difficult to meet."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation and quotation marks omitted).

The AEDPA provides that a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (citing 28 U.S.C. § 2254(d)).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law.  *Id.* at 410 (quoting *Bell v. Cone*, 535 U.S.

685, 694 (2002)). Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (alteration added; quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019) (citing *Harrington*, 562 U.S. at 100). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Furthermore, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

In any event, a federal district court is authorized to deny a claim for federal habeas corpus relief when the claim is subject to rejection under *de novo* review, regardless of whether AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding federal courts may deny petitions for writs of habeas corpus under section 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, as a habeas petitioner will not be entitled to habeas relief if his claim is rejected following *de novo* review); *Connor v. GDCP Warden*, 784 F.3d 752, 767 (11th Cir. 2015).

## B.    Ineffective Assistance of Trial and Appellate Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984).    When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (alterations added; citation omitted).    "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (alteration added; quoting *Harrington*, 562 U.S. at 105).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) petitioner suffered prejudice resulting from that deficiency. *See Strickland*, 466 U.S. at 687–88.

To establish deficient performance, the petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690).    Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690–91.    The court's review of counsel's performance should focus on "not what is possible or 'what

is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (alteration added; footnote call number omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (citation omitted); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013) (citation omitted).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (alteration added).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

A section 2254 petitioner must provide factual support for his contentions regarding counsel's performance. *See Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

## III.   DISCUSSION

### A.   Timeliness, Exhaustion and Procedural Default

Respondent does not dispute the Petition is timely filed.  (*See* Resp. 4).  Nor does Respondent dispute whether Claims 1 and 2 were fairly presented at the state level for purposes of exhaustion.  (*See id.* 4–6).  Where the parties disagree, however, is whether Claim 3 was properly before the state court.  Respondent argues Claim 3 fails on the merits, and, alternatively, it is procedurally defaulted because Petitioner failed to raise it in his Rule 3.850 Motion in the trial

court.  (*See id.* 5–6, 36–39).  According to Petitioner, he raised Claim 3 in his Memorandum of Law.  (*See* Reply 1).

The Court need resolve the parties' dispute over exhaustion because, after careful review of the record, the Court agrees with Respondent and finds that even under *de novo* review, Claim 3 fails on the merits.  *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("Ultimately, when the claim was procedurally defaulted is of no moment because [petitioner's] claim fails on the merits.  As we have said many times and as the Supreme Court has held, a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event." (alterations added; citations omitted)).

The Court proceeds directly to the merits of the Petition.

**B.    Petitioner's Claims**

**Claim 1**

In Claim 1, Petitioner argues that appellate counsel was ineffective for failing to raise on appeal the trial court's error in rejecting a *Batson* claim made during jury selection.  (*See* Pet. 5–9).  Petitioner states that the *Batson* claim became apparent when, over trial counsel's objection, the trial court allowed the prosecution to strike the only Black juror from the jury panel.  (*See id.* 6).  To support this claim, Petitioner cites to an exchange between the State and the stricken juror, Mr. Dixon:

| | |
|---|---|
| [State]: | You mentioned that you're not employed right now.  What do you want to do? |
| Mr. Dixon: | Anything that gives me money. |
| [State]: | Anything that gives you money.  Anything that you specifically like to do? |
| Mr. Dixon: | Um, I like computers, I like electronics. I'm very savvy with computers. |

| [State]: | Okay. Something I'm not savvy with, so good to have somebody else that can do it. All right, thank you. |
| | And you have no issues with law enforcement? |
| Mr. Dixon: | (Inaudible) |
| [State]: | Thank you. Was that a no? |
| Mr. Dixon: | That was a no. |

(Trial Tr. 70–71 (alterations added); *see* Pet. 6–7).

Petitioner contends that appellate counsel should have argued that "race was [a] substantially motivating factor in the [State's] use of its peremptory challenge[,]" and "the [S]tate did not move to strike the white jurors on the basis of their lack of employment[.]" (Pet. 7 (alterations added)). Petitioner additionally argues that the State struck Mr. Dixon because of his race and "because he said he wanted to do anything that gave him money . . . , even committing criminal acts such as theft or robbery such as the Petitioner was accused." (*Id.* 7–8 (alteration added)). According to Petitioner, had appellate counsel raised the *Batson* claim on direct appeal, there is a reasonable probability the result of the appeal would have been different. (*See id.* 8). As stated, the Fourth DCA rejected Petitioner's ineffective assistance of appellate counsel claim. *See Hinestroza*, No. 4D19-0182.

The *Strickland* standard of review applies to a claim of ineffective assistance of appellate counsel. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To demonstrate deficient performance of appellate counsel, a petitioner must show that appellate counsel's failure to discover a non-frivolous issue and file a merits brief raising that issue fell outside the range of professionally acceptable performance. *See Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). To demonstrate prejudice, a petitioner must show a reasonable probability exists that, but for appellate counsel's unreasonable failure to file a merits brief on a particular issue, petitioner would have

11

prevailed on appeal.  *See id.* (citation and footnote call number omitted).

The Equal Protection Clause prohibits the striking of potential jurors for a discriminatory purpose.  *See Batson*, 476 U.S. at 86; *Foster v. Chatman*, 578 U.S. 488, 499–500 (2016).  In considering the merits of a *Batson* claim, the United States Supreme Court has set forth a three-part test for evaluating whether use of a peremptory challenge is unconstitutional: (1) the party opposing the strike must establish a prima facie case to support an inference of purposeful discrimination by showing the juror is a member of a cognizable group; (2) if a prima facie case is established, the party advancing the strike must provide race neutral reasons for the strike; and (3) the trial court must then determine if the party opposing the strike has established purposeful discrimination.  *See Taylor v. Culliver*, 638 F. App'x 809, 814 (11th Cir. 2015) (per curiam) (citing *Batson*, 476 U.S. at 96–98); *see also Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996).  "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."  *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (citations and quotation marks omitted).

Appellate counsel was not ineffective for failing to raise the *Batson* claim on direct appeal.  Trial counsel challenged the State's use of a peremptory strike on Mr. Dixon and asked for a race neutral reason.  (*See* Trial Tr. 103).  The State gave its reason:

> [State]:          Judge, during the jury selection he seemed disinterested when I asked him what does he want to do.  He said anything that will make him money.  It's Court here in jury selection and your response is that you have no interest and all you want to do is make money?  And in a snide kind of way that isn't like I just want to be an entrepreneur and make a lot of money.  So the State would find that that's – ask your Honor to find that's a race neutral reason to strike him.

(Trial Tr. 104 (alteration added)).

A petitioner must identify facts and circumstances that support an inference of

discrimination such as the State's pattern of challenges exercised during voir dire, or the State's selection of non-Black jurors who share characteristics that were used to remove Black jurors from the venire. *See Miller-El v. Dretke*, 545 U.S. 231, 241 (2005); *Batson*, 476 U.S. at 97. To support his claim, Petitioner argues "the [S]tate did not move to strike the white jurors on the basis of their lack of employment[.]" (Pet. 7 (alterations added)). But Petitioner has not alleged, much less shown, that there were any similarly situated non-Black jurors that were not stricken. *See Walls v. Buss*, 658 F.3d 1274, 1282 (11th Cir. 2011). Petitioner's argument is conclusory and fails to point to any supporting record evidence.

Moreover, Petitioner mischaracterizes the State's race neutral reason. The State did not seek to strike Mr. Dixon because he was unemployed. Rather, he was stricken because he "seemed disinterested" and, when asked what he wanted to do for work, his answer "anything that gives [him] money" came across as "snide." (Trial Tr. at 70, 103–04 (alteration added)).

The State's reasons for striking Mr. Dixon were race neutral. And the trial court was entitled to accept these reasons. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768 (alteration added; citation omitted). Petitioner has not presented evidence in either the state court or in his Petition to show that the State's reasons for striking Mr. Dixon were pretextual. Had Petitioner's appellate counsel raised this claim, it is unlikely Petitioner would have been granted relief because the trial court did not err.

Appellate counsel is not ineffective for failing to raise a meritless claim. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) ("Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))). Accordingly, the Fourth DCA's rejection of this claim was

not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

**Claim 2**

In Claim 2, Petitioner argues that trial counsel was ineffective for misadvising him not to accept the State's 15-year plea offer. (*See* Pet. 11). Petitioner alleges that trial counsel "ignored" his desire to accept the plea offer and "instead pushed him to proceed to trial without presenting an 'after thought defense.'" (*Id.*).

Petitioner raised this claim in his Rule 3.850 Motion, and the trial court held an evidentiary hearing. Petitioner describes his testimony at the evidentiary hearing as follows: Petitioner testified that he initially wanted to reject the plea offer (*see id.* 12); he also testified that he "always wanted to take the offer[,]" (*id.* (alteration added)); after the motion to suppress was filed but still pending, Petitioner expressed to counsel that he did not care anymore and just wanted to take the plea offer (*see id.*); counsel and her supervisor "continually advised [Petitioner] to reject the offer in spite of his continual insistence of wanting to take the plea during and after the suppression hearing" (*id.*); and counsel never scheduled a change of plea hearing with the trial court in order for Petitioner to accept the plea offer (*see id.*).

Petitioner states that but for counsel's mis-advice, he would have accepted the plea offer, the State would not have withdrawn the offer, the trial court would have accepted the plea offer, and the terms of the offer were less severe than the sentence actually imposed. (*See id.*). Petitioner insists the trial court's determination "that Petitioner presented no credible evidence" was an unreasonable determination of the facts in light of the evidence presented at the evidentiary hearing. (*Id.* 13).

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d

842, 845 (11th Cir. 2011) (per curiam). "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Id.* (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Consistent with these principles, absent "clear and convincing evidence," courts have "no power on federal habeas review to revisit the state court's credibility determinations." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1259 (11th Cir. 2013) (citations omitted); *accord Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1272 (11th Cir. 2020).

The two-part *Strickland* test applies to claims arising out of the plea process, including the negotiation and consideration of pleas that are rejected or lapse. *See Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). In a plea context, counsel's representation is ineffective only if she commits "serious dereliction[]" of her duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (alteration added). Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citations omitted). To show prejudice, a petitioner must allege and prove that:

> (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Alcorn v. State*, 121 So. 3d 419, 430 (Fla. 2013) (citation omitted).

Following an evidentiary hearing, the trial court denied Petitioner's claim finding that counsel's performance was not deficient. (*See* Order Denying Rule 3.850 110). A claim of mis-advice must be linked to "some kind of deficiency in counsel's presentation." (*Id.*). The trial court analyzed counsel's alleged deficient performance under three separate theories: (1) whether

counsel misadvised Petitioner as to his maximum sentence exposure and whether Petitioner then rejected the plea offer in reliance on the mis-advice; (2) whether counsel prevented Petitioner from accepting the plea; and (3) whether counsel misadvised Petitioner to reject the plea offer based on a belief that she could win at trial and the belief was unreasonable.  (*See id.*).  Taking into consideration the parties' briefs and testimony at the evidentiary hearing, the trial court found none of the theories credible.  The Fourth DCA denied Petitioner's appeal per curiam.  *See Hinestroza*, 303 So. 3d at 942.

In its written opinion, the trial court pointed to record evidence that contradicted Petitioner's argument that counsel misadvised him as to his total sentence exposure.  Specifically, the trial court found credible counsel's testimony that she discussed with Petitioner the maximum sentences he faced for each charge.  (*See* Order Denying Rule 3.850 111; Rule 3.850 Evidentiary Hr'g Tr. 27).  At trial, the judge asked whether the State made a plea offer, the terms of the plea offer, and Petitioner's maximum sentence exposure.  (*See* Order Denying Rule 3.850 111; Trial Tr. 5–6).  When questioned at the evidentiary hearing why, if he was not aware of his maximum sentencing exposure, Petitioner did not raise these issues with the judge, Petitioner answered, "That's what I had an attorney for."  (Order Denying Rule 3.850 111; *see* Rule 3.850 Evidentiary Hr'g Tr. 18).  Based upon the record evidence, the trial court rejected this theory.  (*See* Order Denying Rule 3.850 111).

With regard to the second theory, the trial court made the following findings:

[T]he Court finds the testimony adduced at the hearing establishes that while Defendant did express interest at one point in accepting the State's plea offer, Defendant agreed to proceed to the hearing on his Amended Motion to Suppress instead.  Both Defendant and [counsel] further agree that the State's plea offer remained open for at least some period of time following the suppression hearing. Where their testimony differs is concerning Defendant's position on the State's plea offer following the suppression hearing.

(*Id.* 114 (alterations added; citations omitted)).  Counsel testified that she advised Petitioner of the

plea offer, gave him the opportunity to accept or reject it, and never prevented Petitioner from accepting the plea offer. (*See id.*; Rule 3.850 Evidentiary Hr'g Tr. 25–26). Petitioner testified that he was reluctant to accept the 15-year plea offer because of the PRR designation but also that at all times he wanted to accept the plea offer. The trial court weighed counsel's testimony against that of Petitioner, and, on balance, found that counsel did not improperly prevent Petitioner from accepting the State's offer and it was Petitioner's decision to reject the plea offer and proceed to trial. (*See* Order Denying Rule 3.850 114–15).

Finally, the trial court rejected the third theory — that Petitioner did not accept a plea based upon counsel's unreasonable belief that the afterthought defense theory would be successful at trial. At trial, counsel conceded Petitioner's guilt as to battery and theft, but argued the jury should reject the State's theory that Petitioner committed a planned robbery. Theft and battery are lesser included crimes for the crimes charged, robbery and false imprisonment, respectively; and, if successful, would have led to a lower sentence compared to the 15-year sentence Petitioner received on the robbery count and five-year sentence on the false imprisonment count. The trial court found that record showed that Petitioner supported the "after thought" defense and, looking to counsel's evidence and arguments from the trial record, the defense theory was reasonable. (*See id.* 115–22; *infra* Claim 3).

The state court's rejection of this claim was reasonable. As to the first theory, that counsel misadvised Petitioner on his sentence exposure, Petitioner does not allege this theory in his Petition or point to any specific facts to support his argument that the state court's "adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State proceeding." (Pet. 12).

Regarding the second theory, Petitioner argues that "[t]he record clearly shows trial counsel

and her supervisor continually advised their client to reject the offer in spite of his continual insistence of wanting to take the plea during and after the suppression hearing." (*Id.* (alteration added)). The Court disagrees. While Petitioner correctly states that counsel never scheduled a change of plea hearing for Petitioner to accept the State's plea offer, the conclusion he desires — that counsel prevented him from accepting the plea offer — is not supported by the record. At trial, the judge inquired whether the State extended a plea offer and, if so, its terms. (*See* Trial Tr. 5–6). Petitioner's silence at trial speaks louder than the instant self-serving allegations.

Finally, in support of the third theory, that counsel's afterthought defense was unreasonable, Petitioner offers only that "counsel never prepared nor called the only witness to support such a defense[:] the Petitioner himself." (Pet. 13 (alteration added)); *see Lambrix v. Singletary*, 72 F.3d 1500, 1508 (11th Cir. 1996) (Without evidence of continued coercion, the court cannot assume petitioner's "apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary"). Petitioner fails to address the evidence and argument counsel presented at trial. *See infra* Claim 3. Moreover, Petitioner's statements at trial contradict the argument he now raises:

| | |
|---|---|
| The Court: | All right, Mr. Hinestroza, obviously, you heard your attorneys during closing argument admit that you were guilty of grand theft. You discussed that with your attorneys and you understand that they're fighting for you not to be convicted of robbery, and in order to do that that based on the video and so forth that they are arguing that you're guilty merely of grand theft. Is that correct? |
| [Petitioner]: | Well, for the record, I'd say theft, not grand theft. |
| The Court: | Okay. So that's what their argument is. In fact, that is what they're arguing because they're saying that the State didn't prove the value.<br><br>So you understand that that was the defense strategy? |
| [Petitioner]: | Yes. |

The Court:           And you discussed that with you attorneys and knew that that was the way to go on this. Is that correct?

[Petitioner]:         Yes.

(Trial Tr. 342–43 (alterations added)).

In short, Petitioner has not met his burden. The state court's finding that Petitioner failed to demonstrate deficient performance is entitled to deference. Claim 2 is denied.

**Claim 3**

In Claim 3, Petitioner argues that trial counsel was ineffective in misadvising Petitioner not to testify at trial. (*See* Pet. 14–17). Petitioner states that counsel "failed to adequately advise him concerning his right to testify and the importance of such testimony to support and substantiate the defense of 'after thought' to gain an acquittal on the robbery offense." (*Id.* 15). Had counsel informed Petitioner that his testimony was "necessary" to support the afterthought defense, he would have chosen to testify and "present his version of the events to his jury to show it was an after though[t] when he took the jewelry on his way out of the store." (*Id.* 16 (alteration added)). He argues that his testimony would have created a reasonable probability the outcome of the trial would have been different. (*See id.* 15–16).

Petitioner raised a similar claim in the trial court. (*See* Mem. 192–95). In Petitioner's Memorandum of Law accompanying the Rule 3.850 Motion, one of the sub-headings to Claim 2 (as raised in this Petition) was "Defendant should have testified." (*Id.*). In the trial court, Petitioner argued that counsel advised him she "strongly discouraged" him from testifying because her approach to the afterthought defense did not require him to testify. (*Id.* 195). Given the testimony from the evidentiary hearing and the trial court record, the trial court found counsel did not perform deficiently. (*See* Order Denying Rule 3.850 Mot. 116–22). On appeal to the Fourth DCA, Petitioner reframed the claim and argued the trial court erred in denying his claim that counsel was

ineffective for *interfering* with his right to testify.  (*See* App. Ex. 23, Initial Br. 252–58).  The Fourth DCA per curiam affirmed the denial.  *See Hinestroza*, 303 So. 3d at 942.

It is well settled that a criminal defendant has a fundamental constitutional right to testify on his or her own behalf at trial.  *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987).  "This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992).  "[T]he right to counsel guarantees a defendant the right to receive advice concerning his decision to testify, while the right to testify guarantees a defendant the personal right to choose whether to testify."  *United States v. Anderson*, 1 F.4th 1244, 1254 (11th Cir. 2021) (alteration added).  "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide."  *Teague*, 953 F.2d at 1533 (footnote call number omitted).  "[I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify.  The defendant can then make the choice of whether to take the stand with the advice of competent counsel."  *Id.* (alteration added; footnote and call number omitted).

Deficient performance is shown where "defense counsel refused to accept the defendant's decision to testify and would not call him to the stand."  *Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992) (quotation marks omitted; quoting *Teague*, 953 F.2d at 1534).  Prejudice is shown where, but for counsel's deficiency, the outcome of petitioner's trial would have been different. *See Teague*, 953 F.2d at 1534.

Petitioner fails to demonstrate deficient performance.  First, the trial court conducted the following colloquy with Petitioner at trial where he confirmed the decision not to testify was his own:

20

| The Court: | All right, is the defendant going to testify? |
|---|---|
| [Counsel]: | No, Judge. |
| The Court: | All right, so Mr. Hinestroza, you understand, sir, that that's your decision. You have excellent lawyers here representing you. But at the end of the day it's your decision and yours alone whether to testify. Do you understand that? |
| [Petitioner]: | Yes. |
| The Court: | And you've had ample time to talk to your lawyers to make that decision? |
| [Petitioner]: | Yes. |
| The Court: | And it's your decision not to testify. Is that correct? |
| [Petitioner]: | That's correct. |

(Trial Tr. 248–49 (alterations added)).

Next, at the evidentiary hearing Petitioner failed to present any testimony as to why he chose not to testify or why counsel advised him not to testify. (*See generally* Rule 3.850 Evidentiary Hr'g Tr.). To the contrary, Petitioner testified to a possible strategic reason for him not to testify: he had "in excess of thirty prior felon[ies.]" (*Id.* 18 (alteration added)). Neither did Petitioner present any testimony purporting to show that he disagreed with the afterthought defense. (*See generally id.*). Review of the record supports the conclusion that the ultimate decision not to testify rested with Petitioner, not counsel. Because Petitioner has not shown deficient performance under *de novo* review, he cannot meet his burden under section 2254(d).

Moreover, Petitioner fails to demonstrate prejudice. The defense at trial was to admit Petitioner was at the jewelry store, but he had not planned to commit the robbery. (*See* Trial Tr. 318–28). Instead, counsel conceded that out of frustration with Ms. Ciotto, who Petitioner perceived as overcharging him and breaking their price agreement from the previous day, Petitioner committed battery, not false imprisonment. (*See id.* 319, 324–25). And on his way out

21

of the store, as an afterthought, he committed theft when he took some jewelry with him.  (*See id.* 319–326).  Although Petitioner did not testify to give his version of the facts, counsel was still able to present the afterthought defense at trial.  (*See id.* 318–28).

Touching upon evidence adduced from the State's case-in-chief like Petitioner's and Ms. Ciotto's body language in the surveillance footage (*see id.* 169, 319–20), and Ms. Ciotto's acknowledged familiarity with Petitioner from previous interactions at the jewelry store (*see id.* 182–83), counsel skillfully argued the afterthought defense in closing arguments.  The jury received instructions on the afterthought defense, considered it, and rejected it.  (*See id.* 272, 344).

Although it is possible that Petitioner's testimony would have bolstered the defense's theory, it could not have overcome the overwhelming evidence of Petitioner's guilt in the trial record.  The jury viewed surveillance footage of the robbery (*see id.* 169); Ms. Ciotto gave firsthand testimony about her interactions with Petitioner including him grabbing her hand, twisting it behind her back, and telling her, "Bitch, I have a gun.  I'll kill you.  Move." (*id.* 146); Ms. Ciotto testified that Petitioner forced her into a back room where the safe was located and ordered her to stay on the floor or otherwise he would kill her (*see id.* 148); and Petitioner's own confession was admitted into evidence: "I committed the robbery" (*id.* 217).  Accordingly, Petitioner has not met his burden as to either of *Strickland*'s prongs.  Claim 3 is denied.

### C.    Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing.  *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011).  "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (alteration added).  Here, the pertinent facts are fully developed in the

CASE NO. 20-82192-CIV-ALTONAGA

record.  Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" Petitioner is not entitled to an evidentiary hearing.  *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).

**D.     Certificate of Appealability**

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).  A certificate of appealability shall issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Upon consideration of the record, the Court concludes there is no basis to issue a certificate of appealability.

**IV.     CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.     The Petition Under 28 U.S.C. [Section] 2254 for a Writ of Habeas Corpus by a Person in State Custody **[ECF No. 1]** is **DENIED**.

2.     A *certificate of appealability* is **DENIED**.

3.     Judgment shall issue by separate order.  The Clerk of Court is directed to **CLOSE** this case.  Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Petitioner is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Miami, Florida, this 31st day of January, 2022.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record
         Petitioner, *pro se*

23